THE STATE ex rel. CORNISH VS. TUTTLE.

*September 5 — September 27, 1881.*

CONSTITUTIONAL LAW: VILLAGE CHARTER. *(1, 2) Electors of village officers. (3) Charter valid notwithstanding void provision. (4) Presumption as to validity of charter election.*

CAPACITY TO SUE: PLEADING. *(5) Who may question charter election. Objection to plaintiff's right to sue, how taken.*

1. Sec. 9, art. XIII of the state constitution, provides that "all city, town and village officers [with an exception] shall be elected by the *electors* of such cities, towns or villages, or of some division thereof, or appointed," etc. *Held*, that the words "the electors of said cities," etc., mean residents therein who have the qualifications of electors prescribed in art. III of the constitution.

2. A provision in a village charter further restricting the right to vote at elections of officers of said village, to persons who shall have resided therein twenty days next preceding the election, is invalid, as in conflict with said section 9.

3. The void part of the charter was not the inducement to or consideration for the enactment of the other portions thereof; and the latter constitute by themselves an effective and sufficient village charter. *Held*, that they are valid as such.

4. In *quo warranto* involving the validity of the organization of said village and of an election therein, it must be presumed on demurrer, in the absence of averments to the contrary, that the corporation was organized, and the election held, in accordance with the valid provisions of the charter.

5. *It seems* that a private person who brings an action to test the validity of an election in a municipal corporation, should show by his complaint that he has some interest in the subject of the action (as that he is a resident or tax-payer of the corporation); but the objection cannot be taken by general demurrer.

APPEAL from the Circuit Court for *Walworth* County. This action was brought to oust the defendant from the office of president of the village of Whitewater, which, it is alleged, he has usurped, and is unlawfully exercising. The complaint alleges that on the 3d day of May, 1881, a pretended election was held in said village, pursuant to its charter (chap-

ter 164, P. & L. Laws of 1858)[1], and that certain persons named in the complaint were declared by the election board duly elected to the offices, respectively, of president, trustees and clerk of said village for the ensuing year; that the persons so declared elected met in the evening of the same day and pretended to qualify as such officers; that the person declared elected president then resigned his office; that the board of trustees pretended to accept his resignation, and thereupon appointed the defendant president of the village, to fill the vacancy; and that, from thence hitherto, the defendant has acted as such president, claiming to hold the office by virtue of said appointment. It is claimed and alleged in the complaint, that all of the foregoing proceedings are null and void, because of the following provisions in section 4 of the village charter: "At the first election, and at all subsequent elections of officers in said corporation, every person residing therein and qualified to vote for town officers in the town in which said corporation is situated, and who shall have resided in the village twenty days next preceding the election at which he may offer his vote, shall be entitled to vote in such village for

---

[1] The charter contains the following provisions:

"Sec. 3. The elective officers of said corporation shall be one president, four trustees, one marshal, one treasurer and one clerk, to be elected by the qualified voters thereof at the annual election of said corporation to be held on the first Tuesday of May in each year, and shall hold their respective offices one year, and until their successors are chosen and qualified.

"Sec. 5. At the first and every subsequent election, the electors shall vote for one president, four trustees, one marshal, one treasurer and one clerk.

"Sec. 6. It shall be lawful for the inhabitants of said village, qualified to vote for town officers in the town of Whitewater, to meet at 'Metropolitan Hall,' in said village, on the first Tuesday of May, 1858, at one o'clock P. M., for the first election of officers, and [they] shall choose, *viva voce*, two judges of election and one clerk, who together shall form an election board, and shall then and there proceed to the election of the said officers. The board of election, before opening the polls, shall take and subscribe the oath required of judges of general elections, and, after declaring the result of said election, deliver the same, together with all the papers pertaining to said election, to the president elect, to be filed and kept in the office of the clerk of said village."

any officer required to be elected by this act, and the person or persons having the highest number of votes shall be declared duly elected. Whenever any person shall present himself to give his vote, and either of the judges shall suspect that such person does not possess the qualifications of an elector, or if his vote shall be challenged by an elector, the judges of election, or some one of them, before receiving the vote of any such person, shall require such person to take an oath, in addition to the oath required by any general law of this state, that he possesses the qualifications required by this section of the act, and that he has not voted at such election. If the person offering to vote shall take such oath, his vote shall be received; and if any person shall take such oath knowing it to be false, he shall be deemed guilty of wilful and corrupt perjury, and on conviction thereof shall suffer such punishment as is now, or shall be hereafter, provided by law for persons guilty of perjury."

The defendant demurred to the complaint on the single ground that it does not state facts sufficient to constitute a cause of action. The plaintiff appealed from an order sustaining the demurrer.

For the appellant there was a brief by *Bishop & Cravath*, his attorneys, with *I. C. Sloan*, of counsel, and oral argument by *Mr. Sloan*. They contended, *inter alia:* 1. In actions of this kind the relator is not required to have any interest in the suit beyond that of any other citizen. If it appears that the defendant is not entitled to the office, a good cause of action is stated, and judgment of ouster will be entered. *State v. Dousman*, 28 Wis., 541; R. S., sec. 3466, subd. 3. The objection that the relator has no interest goes only to his "legal capacity to sue." R. S., sec. 2649, subd. 3. This demurrer, being under subd. 5 of that section, waives all other objections, except those specified in sec. 2654. The "capacity to sue" is no part of the facts going to constitute a cause of action. *Burhop v. Milwaukee*, 18 Wis., 436; *Bank of Low-*

*ville v. Edwards*, 11 How. Pr., 216; *Fulton Fire Ins. Co. v. Baldwin*, 37 N. Y., 648; *Phœnix Bank v. Donnell*, 40 id., 410; *Mosselman v. Caen*, 34 Barb., 66. 2. The clause in sec. 4 of the village charter, requiring twenty days' residence previous to the day of a charter election, is repugnant to the constitution (art. III, sec. 1), because it prescribes other and different qualifications for voters. No valid election, therefore, could be held under the charter. *State ex rel. Knowlton v. Williams*, 5 Wis., 308, 317; *State ex rel. Cothren v. Lean*, 9 id., 279; *State ex rel. Wood v. Baker*, 38 id., 71, 86; *Dells v. Kennedy*, 49 id., 556. 3. The question whether a municipal corporation has been legally created may be tested in an action in the nature of *quo warranto* against one claiming to exercise an office of such corporation. If there be no such office as the defendant pretends to exercise, judgment of ouster goes as a matter of course. *People v. Carpenter*, 24 N. Y., 86; *State v. Parker*, 25 Minn., 215; *State v. Coffee*, 59 Mo., 59; *Ex parte Snyder*, 64 id., 58. The election of officers in a legal mode is the foundation of a municipal corporation. If there can be no valid election of officers to administer its affairs, there can be no lawful municipal corporation. Hence the act attempting to incorporate the village of Whitewater is wholly void. *State v. Dousman*, 28 Wis., 541.

For the respondent there was a brief signed by *Weeks & Steele*, his attorneys, and one signed by *S. U. Pinney*, of counsel, and oral argument by *Mr. Weeks* and *Mr. Pinney*. They argued, among other things, that the proceeding by *quo warranto*, where no civil remedy is sought in favor of the relator, is essentially criminal in its nature, upon a prerogative writ, not issuing as of course. Prior to the statute (R. S., sec. 3466, subd. 3), such a proceeding could only be instituted by the attorney general. Since the statute, no "private person" in the name of the state can invoke this extraordinary jurisdiction, unless he has *some* interest in the question as citizen, tax-payer or otherwise. The objection is not to the compe-

tency of the plaintiff, the state, to sue, but to the case made by the complaint. It is, that, conceding all the allegations to be true, it not being an information *ex officio*, nor preferred by a party having some interest in the question, the necessary case does not exist to warrant the interference of the court. The statute is to be construed in the light of the common law, and in accordance with the principle that courts will not listen to parties having no interest and in no sense aggrieved. *Strong v. Winslow*, 3 Pin., 27; *Amory v. Amory*, 26 Wis., 157. The objection goes to the jurisdiction of the court to act on the case before it, and by sec. 2654, R. S., it is not deemed to be waived, although not specifically pointed out by demurrer. See High on Ex. Rem., §§ 701–709; *Commonwealth v. Cluley*, 56 Pa. St., 270; *State v. Lawrence*, 38 Mo., 535; *State v. Boal*, 46 id., 528.

LYON, J. The constitution ordains that "all city, town and village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns or villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose." Article XIII, sec. 9. Manifestly, the term "electors," in this provision, is synonymous with "voters" in sections 7 and 8 of the same article, which relate to the division of counties and the removal of county seats; and it is settled that the latter term in section 8 means those persons who have the qualifications of electors prescribed in article III of the constitution. *State ex rel. Knowlton v. Williams*, 5 Wis., 308; *State ex rel. Cothren v. Lean*, 9 Wis., 279. We cannot doubt, therefore, that the constitution gives to every person residing in the village of Whitewater, when any election for municipal officers is held, and who has the qualifications of an elector specified in article III, the right to vote at such election. The legislature has no power to restrict that right by imposing additional qualifica-

tions. Hence, the provision of section 4 of the village charter, which enacts in substance that an elector, otherwise qualified, must reside in the village twenty days next preceding an election for municipal officers before he is entitled to vote at such election, is in contravention of section 9, article XIII of the constitution, and is therefore null and void.

But because the charter of the village of Whitewater contains this void provision, it by no means follows that the whole act of incorporation is void. Strike out the void part, and the charter still contains valid provisions amply sufficient to enable the municipality fully to perform all of its functions. The rule in such a case, frequently asserted by this court, is, that unless the void part was the compensation for or inducement to the valid portions, so that the whole act, taken together, warrants the belief that the legislature would not have enacted the valid portions alone, such portions will be operative. *Slauson v. Racine*, 13 Wis., 398; *State ex rel. Walsh v. Dousman*, 28 Wis., 541; *Dells v. Kennedy*, 49 Wis., 555. See also cases cited in the brief of counsel for defendant. Municipal corporations constitute a most important feature in our system of government. By them and through them the local and prudential public affairs of large communities are administered. They are the agencies of local self-government, easily reached and influenced by the people for the general good. So important were these corporations regarded by the framers of the constitution that they inserted in that instrument an express mandate to the legislature to "provide for the organization of cities and incorporated villages." Article XI, sec. 3. Since the adoption of the constitution, the legislature has, in obedience to such mandate, created numerous municipal corporations, and has enacted a general law for the incorporation of villages. While it is true that quite a number of special charters contain restrictions upon the right to vote at municipal elections, similar to that in the charter of Whitewater, yet in very many of them no such restriction is found. Neither is it found in the gen-

eral law for the incorporation of villages.  R. S., 291, sec. 873.

Considering that it is thus made the duty of the legislature to provide for the organization of municipal corporations, and that this duty has been performed in so many instances without inserting in the acts of incorporation the invalid restriction under consideration; and considering also that there is no apparent reason why the legislature should deem it more important to restrict the right to vote in Whitewater than in many other municipalities of the state where no such restriction has been attempted,— it seems very clear to our minds that the void part of section 4 of the village charter was not the inducement to, or consideration for, the enactment of the valid portions of the charter.  On the contrary, we have no doubt that the legislature would have as readily enacted the valid portions of the act, had the void provision been wholly omitted therefrom.  In the examination of this subject we do not forget that in *State ex rel. Knowlton v. Williams*, 5 Wis., 308, it was held that an unconstitutional restriction of the right to vote on the question of the removal of a county seat invalidated the act submitting that question to a vote of the people.  That decision goes upon the ground that the only authority in that behalf conferred upon the legislature by the constitution, was to submit the question to the electors of the county,— that is, to those residents of the county having the constitutional qualifications of electors or voters,— and that the act under consideration in that case submitted the question to a portion only of such electors, and was therefore *ultra vires*.  The distinction between that and the present case is plain.  Strike out the unconstitutional provision in the act submitting the question of removing the county seat, and there is nothing left of the act.  But, as already observed, we may strike out the void provision in the charter of Whitewater, and there remains a valid charter, which furnishes all the machinery for organizing the corporation and for performing all of its municipal functions.  It must be presumed that the

corporation was organized and the election of 1881 held under the valid provisions of the charter, rejecting the unconstitutional restriction in section 4. It is not alleged in the complaint that any lawful voter has been disfranchised because of that provision; and had it been so alleged, it is not perceived how that could affect the validity of elections held under the charter.

Our conclusions are, that the village of Whitewater was legally incorporated and organized; that the election of 1881 was a valid election; that the persons elected thereat to the several village offices were legally elected and qualified; and that the defendant was legally appointed by the board of trustees, pursuant to the charter (section 16), to the office of president of the village, to fill the vacancy caused by the resignation of the president chosen at such election, and is entitled to that office. All this sufficiently appears from the complaint and the charter of the village, applying thereto those presumptions of regularity which the law recognizes and sanctions.

It was argued by counsel for defendant, that the complaint is defective in that it fails to show that the relator is a resident or tax-payer of Whitewater. It was claimed that a private person who brings an action like this, must show some interest in the subject of the action, or he has no standing in court. We are inclined to concur in this proposition. We suppose, however, that this is merely an objection that the relator fails to show that he has capacity to sue; and we understand that if the complaint is demurrable for that reason, the objection must be made specially, or a demurrer will not reach it. R. S., 725, secs. 2649, 2651. Whether the complaint is demurrable for that reason, or whether the want of capacity to sue (the complaint being silent on that subject) should be alleged by way of answer, is not here determined.

*By the Court.*— The order sustaining the demurrer to the complaint is affirmed.